Our first argument for today is 23-2101, American Science and Engineering v. Stewart. Mr. Henkel? Good morning, Your Honors. Erin Henkel on behalf of American Science and Engineering. May it please the Court. The first appeal we have involves U.S. Patent 8-300-763. I don't anticipate this to be a lengthy argument. This appeal entirely turns around an expert's after-the-fact amendments to the express descriptions of a patent that he denominated as a patent. You're talking about the little dashed red lines. And the entry points and the scanning angles and essentially everything that the Board relied on. If you look at the final written decision, I counted it up last night, the Board cites the patent just precisely one time in their anticipation analysis. Everything else is the expert's after-the-fact characterizations of that patent based on the 763 patent. And so this is relatively straightforward. It's not the anticipation analysis that this Court requires from any finder of fact. Counsel, you agree that the opinion doesn't have to be perfect for us to reach a conclusion with respect to a firm, right? Absolutely, Your Honor. And I know this Court sits in judgment or reverses judgment, not opinions. But the judgment is wrong and the analysis was flawed. Mr. Hangel, even if you're right on anticipation, don't you have a problem on obviousness? Well, I would disagree because the problems that are inherent in the anticipation analysis is the lack of disclosure. This is an express anticipation case. At least that's how the Board framed their opinion in their analysis. Well, there's a disclosure of scanning. There's a disclosure of a sweeping beam. It's just a question of where that beam is located, whether it's located at an entry point, and whether it covers the entire inspection space. And it seems to me you've got some pretty compelling evidence that it would be just a logical change to extend that to the entry of the physical structure. I would respectfully disagree with the logical analysis. I know that their experts said it would be most logical to start at certain points. But that is the precise type of hindsight analysis that is not permissible on obviousness. Well, if you're going to inspect things of different sizes, wouldn't you want to have a space that was large enough to accommodate whatever those variables might be? Your Honor, I think our expert admitted to that, and I think that makes intuitive sense with the teachings of the 763 patent. But as we explained in our blue brief, there were other solutions to scanning the entire truck. And we talked about the Swift patent and the publication. You can do corner scanning, or you can do like a boom-based scanning. And you don't necessarily have to do it in the way that the patent teaches. And in the art, there were different ways. You can do multi-pass scanning, and we discussed those in our briefing. The patent provides a particular solution to a problem that wasn't in the art. And so that's the advancement, and that's what we should be looking for, what would have motivated someone. And the evidence that the board relied on, and the only thing we have is hindsight. Because it's in theory that you could look at the known elements, as Your Honor pointed out, yes, x-ray scanning existed long before this patent. So did backscatter technology, and backscatter detectors, and backscatter imaging. But it's not an a la carte type of ordering off the menu thing. It's the new and novel use of the previously known structures that is exemplified in these method claims that render them patentable, both over the prior art alone and in combination. Does that answer the court's question on obviousness?  Thank you. So I had a little kind of like outline of what I want to talk about. I wanted to give an overview, at least from my perspective, of what the invention is, if that's helpful to the court. Then I would like to go through some of the admissions that the board made on anticipation, which I think are fatal to that. And then lastly, return to the 103 obviousness analysis of the board, unless the court has questions for me now. I would prefer if you would focus on the obviousness analysis first, as opposed to the order you're proposing. So the best way to focus on the obviousness analysis, unfortunately, I do have to address the board's findings on anticipation. And I think the best way to do that is to point out the three, what I would argue are the main flaws. And the first is that inspection space, the drawing of Figure 1. This is what we address in our blue brief at pages 30 through 36 and 40 through 44. This is the foundational assumption, because it's what sets up the first edge, the first entry point, and the inspection space. None of that is expressly described in the patent. I urge the court to read Chalmers. And when I refer to Chalmers, we're not disputing that it incorporates by reference the other Grosvenor's reference. Both of those are patents from my client, who has been active in the space for 50-plus years. We're not disputing that Grosvenor's is incorporated by reference to the Chalmers. So when I say Chalmers, I'm going to be globally referring to both references and their teachings combined. And I'm happy to address them if the court has specific questions. But there is nothing in Chalmers, both alone or in combination with Grosvenor's, that provides information that defines this inspection space, that defines the first edge that's identified by the… We would know to start scanning at a corner to support the obviousness rationale here. That is more focused on the obviousness, but I'm… It's what I want to focus on. Yeah, I understand. The problem with the board's foundational analysis is that it assumes that the detector arrays that are depicted in Figure 1 of Chalmers are drawn to scale. When this was pointed out to the board by my client, distance itself from that characterization of Figure 1, and they said, the figure's not to scale. You cannot rely on it to be at scale. And so we weren't… They argued that we couldn't argue that the rotating chopper wheel is drawn to scale. The entire board's analysis depends on that detector array being drawn to scale relative to the truck. So if the question is why can't you… Can you show me where in the analysis it depends on it being drawn to scale? Can you give me a page? The board actually didn't reference it. It was an issue that came up between the parties. That would be Appendix 0-3-9-9. That's when bike and distance itself from the chopper wheel. Essentially, we pointed out that if you do a 60 degree, a 72 degree, or a 90 degree scan from the… From Source 54, as it's depicted in Figure 1 of Chalmers, you're not going to scan the whole truck. And their response was, of course, it's not drawn to scale. You can't rely on it as being drawn to scale, but that's absolutely what the board did. And it's kind of like a picking and choosing. How do we know the board did that? What is the precise page where I should know and look at that I would know the board did what you just said? Appendix… Absolutely, Your Honor. Appendix 28 is when the board says that the inspection space is delineated by the detectors 56 and 24. They repeat that analysis at Appendix 37 through 38, citing Appendix 888, which is Lanza's, Dr. Lanza's declaration in Paragraph 127. I'm on JA 28. You're just one little too fast for me. Sorry, Your Honor. Where on page 28? There's a quote, and hopefully I have it right. Accordingly, we are persuaded on the complete record before us that Chalmers inspection space… I think I must be looking at it. Am I in the right brief? You have two of them here. I think I'm… It's at Appendix 28. Okay. All right. The board basically finds that the inspection space in Chalmers is defined by detectors 24 and 56. They say so again on page 37 and 38 of the final written decision, which is Appendix 37 and 38. And again on page 40, where they say, overall, we find persuasive petitioner's arguments and Dr. Lanza's… And you told me page 28. I'm like, what is she… Her page 28 looks like mine. Where does she see this? I don't see anything. I don't see whatever you're talking about. The way the line numbers… Or not line numbers. The lines that he is referring to. But that still doesn't answer my question, in my opinion, that this is the board concluding that it must be drawn to scale. Oh. If that was the question, Your Honor, I misunderstood it. They don't say those words. Okay. So you just are reading some type of ghost writing on the page to get to the fact that you think the board is contending that it… Or is assuming that it had to be drawn to scale? Well, they're relying on the scale that's provided for the detector array in figure one as defining the inspection space, on the one hand. And then, on the other hand, saying, well, you can't rely on the scanning angles that that X-ray source would provide because the figure is not drawn to scale. Or that was Vikan's argument. The board did not discuss the scale issue. It was presented to the board. It was not addressed. But it's not drawn to scale. I think we all know that. That was the petitioner's argument below. And that's the foundational assumption that goes into the board's anticipation analysis, is that who cares about everything else? The detectors are drawn to scale relative to the inspected object. We think that was incorrect. It's certainly not expressly supported in the records itself. There are two other assumptions or admissions that the board made in terms of anticipation. Do you have anything else that obvious? Because I'm going to be honest. I don't totally follow your last argument about the drawn to scale thing. I don't necessarily see that the board erred in the way that you're suggesting. So is there another argument on obviousness that you have? Or is that the main obviousness argument? Fair enough. Your Honor, I'm sorry if I was less than clear on that. There are two admissions on the scanning space where the board expressly says we recognize A.S. and E.'s argument, but it doesn't expressly disclose this. So that funnels into the obviousness. The amount of issues and changes that the board had to make to reach its anticipation finding were supported in its two-page analysis on obviousness. I know, but we just talked about obviousness. Look, you got us on anticipation. You went on anticipation. Problem is they made an alternative finding of obviousness, and I don't see how you went on that one. So that's kind of why I think we're all trying to keep you focused on obviousness because we don't think that you need to spin your wheels on anticipation. I'm just trying to be honest and helpful. So, I mean, just try to focus on obviousness if you could because that's where you've got to persuade at least me. Fair enough. The changes that were made on the obviousness analysis are both the position and configuration of the X-ray sources, not just from the right-hand perspective but from the bottom. The board basically says you can choose any number of chopper wheel arrangements, the number of spokes, and make a customized scanning arc. And then you can, in ordinary skill, you can move and change the geometry to start and stop the scanning wherever you want. That was the first set of changes that the board says was obvious, and the entire motivation was that it was logical and that the motivation was to scan the entire truck. But as the board recognized on page 40 of the final written decision, that's Appendix 40, even the proposed obviousness combination doesn't scan the entire truck here. It omits the wheels. So the board's analysis and reasoning and why someone would be motivated to apply this hindsight analysis doesn't even solve the problem that the board identified as motivating the skilled artisan. You know, people could pack drugs in contraband inside the wheels of the cargo vehicle. So if that's the motivation, the solution that the board found to solve that problem is not even— Well, I mean, look, I like to lose a little bit of weight. I drink Diet Coke. That probably is not going to get me to lose all the weight that I want to lose, but it's like helping, right? So why does the board have to conclude that it also has to be able to scan the tires? I hear your point. Your point is that the way it's described, you can't scan the tires. It doesn't get the whole vehicle. But does that really mean it's not a helpful method? It's not a good idea to do it? Don't you want to be able to scan more rather than, you know, less of the whole thing and maybe it doesn't get everything? But isn't it logical to think that a skilled artisan would want to modify it in a way to scan more of it? Your Honor, I would agree that our expert admitted, and I don't dispute, that scanning the entire vehicle is the goal. But this is not the only way to do it, and the prior art already had solutions to that, including multi-pass scanning and changing the positions of the scanners. If the motivation of looking at Chalmers combined with Grogson is to scan the entire truck, what we've identified and what the board relied on doesn't solve that problem. And this is exactly the explanation that this court expects from the finder of fact to protect against hindsight bias and working backwards from that. But was the motivation to scan the entire truck or to do a better job of scanning? The motivation that the board relied on was to scan the entire vehicle. All right. Okay, you want to save the rest of your time for rebuttal? Yes, thank you, Your Honor. Mr. LaMarca? Hey, please record. William LaMarca on behalf of the United States PTO. I guess the focus is on obviousness, so I'll try to respond to that, Your Honor. Yeah, if you take a look at Figure 1 in Chalmers, which is the prior art reference that we're talking about, the complaint seems to be that, oh, the drawings are not to scale. I think no one disputes that the drawings are not to scale. We all agree. But regardless of the scale of the drawing in Figure 1, the detectors, 56 and 24, whether they're small or large, regardless, their relationship to each other will define the inspection space. Let me just ask a dumb question.  Is the argument that he's making about the wheels not being scanned tied to his argument that it has to be drawn to scale or is being understood to be drawn to scale? Are those two arguments intertwined? I mean, it sounds like that's the argument appellants are making, but in our view, the government's view, what the petitioner's point is, as well as the petitioner's expert, is that the chopper wheel, which is the thing that spins around that directs the beam up and down and creates the raster scan, if you were to position that wheel slightly further away, it would encompass more of the inspection space. If you position that wheel closer, it won't catch it all. It'll cut some of the way there. Like a light bulb. Moving it further away, get it broader. The example that I can think of, the best analogy is... You don't like my light bulb? I like your example. It's a great example. Focusing a beam or focusing a lens on a camera, if I'm real close to you, I have to adjust the focus to get you in focus. If I stand further away, I have to readjust the focus. Similarly here... At my age, I prefer to stand a little further away. And I'll do the best I can, Your Honor. No, I don't mean you personally. I meant when you took the picture. It's just... A little bit blurry, too. Can we have a filter on that camera? But the point is here, with these chopper wheels, they don't disclose any specific distance that the chopper wheel is from the edge, and as a result, an ordinary artisan has to understand that, and that's what the expert, Dr. Lanza, testified to. Dr. Lanza, indeed, relied on the Chalmers reference and the Grodin's reference. He focused on that evidence, but he also gave us the understanding of how would an ordinary skilled artisan read these references. That's his opinion. He's an expert. So, counsel, I don't think counsel is taking issue with the motivation to combine testimony or support. Is only support related to motivation to combine found on JA 918, or is it elsewhere? Well, I think if you read Petitioner's response brief, what you'll see is that the board said, yeah, the reason that you'd want to combine these is, number one, if you read Chalmers, the reference throughout, and we could go through it and read it all, but basically their goal was to scan the objects inside the inspection space. Someone, if you're working at Border Patrol, for example... Can you answer my question, though? I want the answer to where in the record, what pages do you want me to look at where it summarizes up the support? Yeah, one of the best concise statements that I can find for you is at page 56 of the board decision. If you read page 56 at the very bottom of the board decision, where they kind of sum it up, I can take you there as soon as you get there. Down at the very bottom it says, we find. Do you see that? We find Dr. Lanza's testimony the most persuasive, particularly because, as discussed above, it was well within the level of ordinary skill in the art, in fact beneficial, if not necessary, to arrange the physical elements of a radiation backscatter scanner, including the chopper wheel, in a manner to complete a full scan of an object within a designated inspection space. So what they're basically saying is if you read the Chalmers reference thoroughly, you'll understand that their number one goal is to not scan part of an object. It's to scan the whole truck that's sitting in there, or car, or motorcycle. Because why? We want to know whether or not there's any contraband. Is there weapons in there? Is there contraband in there? If we're only scanning pieces of the truck, then we would never set the device up that way. An ordinary artist would never follow it. So the board accepted that testimony from the expert, that that's the main driver on why you would take all the elements are there, all the pieces are there, all you have to do is make sure they're positioned correctly to achieve your objective, which is to get a full scan of the object that you're scanning. So I think, Your Honor, to respond to your question specifically, that's the sum up of all the board's analysis on why and why Dr. Lanza, the expert, believes there's motivation to make those really minor adjustments to what you see disclosed in Figure 1. And of course, the board as well as the petitioner believes there's enough there for anticipation, but I understand from the court that we're focusing on obvious, so I'm trying to give you our response to the obviousness arguments. But that's our number one response. And whether you use a six-spoke chopper wheel and the angle was too narrow, all you have to do is back it up and you encompass the whole thing. If you use a five-spoke chopper wheel, the angle's broader and you may not have to back it up as much. The risk is, if your angle is too broad and you're shooting out X-ray beams too far out beyond the inspection space, there's a risk that it could become unsafe because there's people standing around this thing, right? So you want to focus your beam where you need it on the inspection space, where the object is that has to be inspected. And that's what Chalmers teaches, that's what Grodin teaches. And if you read the Grodin's reference, in fact, which everyone agrees is incorporated by reference, you'll see that they inspect not just trucks, but they inspect smaller objects like luggage. And, of course, you have to adjust these components, these parameters to make it adjust to apply to that particular object, right? So I think that's the main motivation behind it all and why it would have been obvious if not anticipated, Your Honor. And I'm happy to continue. Is there anything other than Dr. Lanz's testimony to support the conclusion that one of ordinary skill in the art would be motivated to alter the space? Well, I think there's an admission by the expert on the other side. They've admitted that you'd make these adjustments. It would be very easy. I'll give it to you. They called it simple geometry, I believe. And I can take you to that quote where, I think it's page, let's see if I can get to that. Yeah, here we go. On page 32 of the board decision, they reprint the deposition transcript of AS&E's expert. Do you see page 32 and 31, Your Honor, of the board decision? Do you see that? Yep. If you go down, if you look on the left-hand side at the bottom of 31, it says answer or question. Would a person of skill in the art, given a 60-degree beam sweep for these chopper wheels, would a person of skill in the art know how far to locate the chopper wheel, that's how far away, so that it would sweep the contents of the vehicle? In other words, would they know how to position it? In general, and in the answer by the expert from the other side, a person of skill in the art would certainly know how far to position the X-ray source away from the object to get certain vertical and horizontal region of scanning. Question, that's just simple geometry, correct? Answer, yes, that's just simple geometry. So the point is everybody agrees this is not a complicated thing. You've got these general components. You've got chopper wheels. You've got X-ray beam sources. They're positioned around an object. You know that you have to position them in the right place, just like a purchaser of a camera has to know how to focus the lens to get an in-focus picture, right? So I think that's my answer, Your Honor. Yeah, thank you. Is there anything further? Okay, I'll take a seat. Thank you for your time. Thank you, Mr. Momarka. Mr. Henkel, you have a little bit of time. What do you say to the testimony that was just described by your colleague there? I think it was candid testimony. That is frankly accurate. It is a matter of geometry. But the question on obvious is not whether a person with skill in the art could do something. It's whether they would and whether they had a reason to do so. There were other solutions that existed in the art. We're not only talking about the geometry of how far away the rotating chopper wheel is. We're talking about the configuration of the chopper wheel itself, whether it has four or five or six spokes and scans at 62, 72, or 90-degree arc angles, not just from one perspective, but from a second perspective, as claimed. And we're also talking about the dimensions of the detectors. These are all variables that the board's analysis kind of just says, oh, well, yeah, anyone could have done that. Well, anyone could have done it, but they did not, and there's no articulated reason why they would have to arrive at the claim dimension. And that's the genesis of our non-obviousness argument. And if there are no further questions, I'm done. Thank you. Okay. Thank both counsel. This case is taken under submission.